<u>**NOT FOR PUBLICATION**</u>

**<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>**

|  |  |
|---|---|
| MODY CAMARA, : <br> : <br> Petitioner, : <br> : Civil Action No. 06-1568 (JAG) <br> v. : <br> : **OPINION** <br> ALBERTO GONZALES, United States : <br> Attorney General, : <br> : <br> MICHAEL CHERTOFF, Secretary, US : <br> Department of Homeland Security, : <br> : <br> RAYMOND SIMONESE, Acting Field : <br> Director, New Jersey Office, Deportation : <br> and Detention, Immigration and Customs : <br> Enforcement, : <br> : <br> C. COLLINES, [sic] Warden, Elizabeth : <br> Detention Center, : <br> : <br> Respondents. : | |

**<u>GREENAWAY, JR., U.S.D.J.</u>**

This matter comes before this Court on the Petition of Mody Camara ("Petitioner") seeking the issuance of a writ of habeas corpus ("Petition"), pursuant to 28 U.S.C. § 2241. Petitioner seeks to have this Court order Petitioner's release from custody and declare that Respondents[1] violated Petitioner's procedural due process rights. Petitioner argues that, pursuant

---

[1] The Federal Respondents in this action include Alberto Gonzales, former Attorney General of the United States; Michael Chertoff, Secretary of the United States Department of

to Zadvydas v. Davis, 533 U.S. 678 (2001), Petitioner has been detained longer than the presumptively constitutional post-removal period of six months; there is no significant likelihood of removal in the reasonable future; and his detention is unconstitutional.  For the reasons set forth in this opinion, this Court shall dismiss the Petition, without prejudice.

## INTRODUCTION

On April 3, 2006, Petitioner, who claims to be a citizen of Mauritania, filed a petition seeking the issuance of a writ of habeas corpus.  The Board of Immigration Appeals ("BIA") ordered that Petitioner be removed in a decision rendered on March 29, 2002.  Petitioner has been detained by the Immigration and Customs Enforcement ("ICE") since November 2004.  Petitioner initiated this cause of action to review Respondents' failure to release Petitioner from custody, in accordance with the Supreme Court's holding in Zadvydas v. Davis.

## FACTUAL BACKGROUND

On or about February 26, 1999, ICE issued a Notice to Appear to Petitioner, alleging that Petitioner was an alien who had not been admitted or paroled into the United States, and that Petitioner was removable, pursuant to Section 212(a)(6)(A)(I) of the Immigration and Nationality Act.  (Decl. of Keith Cozine ¶ 2) ("Cozine Decl.")[2]  After a hearing, the Immigration Judge ("IJ")

---

Homeland Security; and Raymond Simonese, Acting Field Director of the New Jersey Office for Deportation and Detention, Immigration and Customs Enforcement.  In a separate Answer, Respondent Charlotte Collins stated that she takes no position with respect to Petitioner's Writ of Habeas Corpus, because as Warden of the Elizabeth Detention Center she has no responsibility for determining the length of an individual's detention.

[2] Keith Cozine is the Deportation Officer in the Detention and Removal Branch of the Bureau of Immigration and Customs Enforcement ("ICE") responsible for Petitioner's case.  His declaration was filed as an exhibit to the Federal Respondents' Answer to Petition for Writ of Habeas Corpus ("Answer").

2

issued a decision on October 29, 1999, ruling that Petitioner had not carried his burden of establishing that he had applied for asylum within one year of his last arrival to the United States, and that he was, therefore, removable. (Id. at ¶ 4.) Nonetheless, the IJ addressed the merits of Petitioner's application for asylum and stay of removal, and found that Petitioner lacked credibility because his hearing testimony contradicted his application in a number of significant ways. (Id.) Similarly, the IJ found that Petitioner's testimony regarding his Mauritanian citizenship was vague and general. (Fed. Resp'ts Answer 2; see also Cozine Decl. Ex. B.) The IJ, therefore, denied Petitioner's application for asylum and withholding of removal. (Cozine Decl. ¶ 4.)

Petitioner appealed the IJ's decision. (Id. at ¶ 5.) The appeal was dismissed, and the final Order of Removal was issued on March 29, 2002. (Id.) Petitioner was instructed to appear for deportation on December 16, 2002; however, he failed to report, as ordered. (Id. at ¶ 6.) Agents of ICE arrested, and detained, Petitioner on October 26, 2004. (Id.) He has been in custody since that date. (Pet. for a Writ of Habeas Corpus ¶ 1.)

On October 27, 2004, ICE issued a warning for failure to depart to Petitioner, and informed him that his period of detention could be extended if he failed to cooperate in good faith to obtain travel documents. (Cozine Decl. ¶ 7.)

On October 18, 2005, Mr. Abass, Consular Officer from the Embassy of Mauritania, interviewed Petitioner, and stated that, if Petitioner verified his citizenship, he would issue travel documents. (Id. at ¶ 12.) Mr. Abass indicated, however, that he believed Petitioner to be a citizen of Senegal or Mali. (Id.) ICE also requested travel documents from both Senegal and Mali, however, neither country responded. (Id.)

3

Petitioner's custody has been reviewed several times since the start of his detention, and he has been issued several warnings for failure to depart, as well as failure to cooperate. (Id. at ¶¶ 13-15.) On April 15, 2006, ICE determined that Petitioner shall remain in custody because, while his removal is feasible, removal is delayed only by Petitioner's continued failure to provide documentation of his true identity. (Id. at ¶ 15; see also, Cozine Decl. Ex. J.)

## DISCUSSION

The detention, release, and removal of aliens ordered to be removed from the United States is governed by the statutory provisions of 8 U.S.C. § 1231. Under § 1231(a), the Attorney General has 90 days to remove an alien from the United States after an order of removal is issued. 8 U.S.C. § 1231. During the interim 90 day removal period, the Attorney General is required to detain an alien. Id. at § 1231(a)(2). Any detention beyond the removal period is authorized only as long as is "reasonably necessary" to effectuate removal from the country. Zadvydas v. Davis, 533 U.S. 678, 689 (2001).

The seminal case addressing the handling of aliens is Zadvydas v. Davis, in which the Supreme Court held that six months is an acceptable length of time to detain an alien while the removal process is pending. 533 U.S. at 701. "After this six month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Pursuant to the Supreme Court's holding in Zadvydas, this Court must determine whether Petitioner has made the requisite showing or, in other words, proved that there exists "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

4

future." Id.  If Petitioner has not met his burden, his continued detention will not be deemed unconstitutional.

        **A.**        **Petitioner Has Failed to Meet His Burden Under Zadvydas**

The paucity of evidence that Petitioner has supplied for the record requires this Court to dismiss Petitioner's request.  In his Petition, Petitioner posits that he "has signed all the documents provided by . . . ICE[,] and has cooperated to obtain travel documents. . . . Thus far, the Mauritanian Mission has failed to issue a travel document for the Petitioner."  (Pet. ¶¶ 23-24.) Petitioner states that, as a result, his removal is not reasonably foreseeable, and he should be released from the unconstitutional bodily restraint that ICE is inflicting upon him.  (Id. at ¶¶ 25-26.)

Petitioner has not, however, provided any documentary evidence to this Court substantiating his bald assertion that removal is not reasonably foreseeable.  By simply proffering in his Petition, that the Mauritanian Embassy has not yet provided travel documents, and without supplying evidence to support such a claim, Petitioner does not meet the Zadvydas burden of providing "*good reason* to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  533 U.S. at 701 (emphasis added).  Indeed, as long as the Mauritanian Embassy continues to be willing to consider issuing travel documents for Petitioner, (and it is clear that the Embassy is willing, (see, e.g., Cozine Decl. ¶ 12)), his deportation remains reasonably foreseeable.  See Barenboy v. Attorney General of the United States, 160 F. App'x 258, 261 n.3 (3d Cir. 2005) (per curiam).

When presented with factually similar cases, the Third Circuit has held that if a petitioner has not provided any documentary evidence to support a Zadvydas claim, that petitioner cannot

5

be said to have provided good reason to believe that there is no reasonable likelihood of removal. Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005) ("[Petitioner] has produced no documentary evidence, however, from the Antiguan Embassy . . . to substantiate his contention that travel documents will not be issued in the reasonably foreseeable future. . . . Consequently . . . removal from the United States remains reasonably foreseeable."); Barenboy, 160 F. App'x at 260-261 ("[Petitioner] argued that his removal in the foreseeable future was unlikely, but provided no substantiation for the assertion, aside from his attorney's statements. . . [Petitioner] has failed to produce any competent evidence on the question . . . [and he] may file a habeas petition in the future if he can show that his removal is not reasonably foreseeable.").  Therefore, as a result of Petitioner's failure to meet his burden under Zadvydas, by not providing any evidence to support his claim, this Court must dismiss Petitioner's request.

    **B.**  **Petitioner Has Failed to Cooperate in Effectuating His Removal**

  This Court's ruling above -- that Petitioner's lack of evidence to support his position precludes a ruling in his favor -- is a sufficient, independent ground for dismissal.  However, Respondents' evidence of Petitioner's failure to cooperate provides an alternate basis to find that Petitioner has not met the Zadvydas burden.

  In their Answer, the Federal Respondents argue that Petitioner has failed to cooperate in effectuating his removal.  Specifically, the Federal Respondents maintain that Petitioner was repeatedly issued warnings for failure to cooperate with ICE to provide the necessary information evidencing his nationality.  (Fed. Resp'ts Answer 5-8.)  Despite these warnings, Petitioner never provided ICE or the Mauritanian Embassy, with verification of his citizenship.  Petitioner's failure to cooperate in obtaining his travel documentation soundly precludes any possibility of

determining that he has met the Zadvydas burden.  Additionally, as Respondents assert in their Answer, "Congress has made clear that the removal period shall be extended where an alien *fails to cooperate*," pursuant to INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C).  (Id. at 6) (emphasis added); see also 8 U.S.C. § 1231(a)(1)(C) (stating that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period *if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure*.") (emphasis added).

Therefore, this Court aligns its reasoning with that of the Ninth Circuit in Pelich v. Immigration and Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003), and with several decisions from district courts within the Third Circuit that cite Pelich.[3]  In Pelich, a case cited by the Federal Respondents, the petitioner refused to cooperate with the efforts of the Immigration and Naturalization Service ("INS") to remove him by refusing to fill out a Polish passport application.  329 F.3d at 1058.  The petitioner's refusal to complete the passport application directly impeded Poland's ability to determine whether he qualified for Polish travel documents.  Therefore, the Ninth Circuit held that "a petitioner who impedes INS removal efforts 'has not met its burden of showing that there is no significant likelihood of removal in the reasonably

---

[3] See Francois v. Chertoff, No. 06-3589, 2006 WL 2668193 at *3 n.5 (D.N.J. Sept. 15, 2006) ("Indeed, it would be anomalous to suggest that alien's frustration of government's efforts to remove him would reward the alien with release from custody if the alien is persistent enough to keep his thwarting activities for a period exceeding Zadvydas' six months. 'Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. . . .'") (quoting Pelich, 329 F.3d at 1060);  Lin v. Ashcroft, No. 04-1101, 2004 WL 834728, at *3 (E.D. Pa. April 15, 2004) ("Petitioner entered the United States with a valid Chinese passport, but has made no effort to surrender this document, thus advancing the removal process. The Ninth Circuit has recognized that 'Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.'") (quoting Pelich, 329 F.3d at 1060).

7

foreseeable future.'" 329 F.3d at 1060 (internal citation omitted).

Similarly, in the instant case, Petitioner has failed to provide INS or the Mauritanian Embassy with verification of his citizenship. As a result of Petitioner's failure to cooperate, the Mauritanian Embassy has refrained from issuing the necessary travel documents to effectuate his removal, and thereby end his detention. This Court, therefore, cannot agree with Petitioner's argument that his detention beyond the presumptively constitutional post-removal period of six months is unconstitutional. Indeed, Petitioner's continued detention is of his own doing.[4]

For the foregoing reasons, this Court concludes that Petitioner has not met the Zadvydas burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.

---

[4] It is also worth noting that this is not simply a case where Petitioner has lost his papers, or where someone is withholding the information he needs to present to INS in order to prove his citizenship. Under such a situation, Petitioner would be able to argue futility. However, this case presents a situation in which Petitioner is not cooperating with immigration officials, and has failed to present sufficient evidence to prove that his detention is the result of anything other than his lack of cooperation.

In fact, the IJ found that Petitioner's testimony, at his hearing, was inconsistent with his application, and that as a result of such inconsistencies, Petitioner's credibility was significantly compromised. Specifically, Petitioner claimed that he came to the United States on a ship, yet could not present a shred of information about the ship. (Oral Decision and Order of the Immigration Judge 12, Oct. 29, 1999.) He did not know the name of the ship, what was on the ship, or when the ship arrived in Miami. (Id.) Petitioner also presented multiple instances of conflicting testimony with respect to contact with his mother. At one point, Petitioner claimed that he had received a letter from his mother, and "knew that [she] was okay." However, at the hearing, Petitioner claimed he had no contact with his mother. (Id. at 11.) Based on these, and several other inconsistencies, the IJ held that Petitioner had not presented sufficient evidence to prove that he is eligible for withholding of removal. (Id. at 14.)

## **CONCLUSION**

For the reasons above, this Court dismisses the Petition, without prejudice.

Dated: December 6, 2007

                                         S/Joseph A. Greenaway, Jr.
                                         JOSEPH A. GREENAWAY, JR., U.S.D.J.